1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jeffrey L. Fazio (146043)
jlf@fazmiclaw.com
Dina E. Micheletti (184141)
dem@fazmiclaw.com
**FAZIO | MICHELETTI LLP**
2410 Camino Ramon, Suite 315
San Ramon, California 94583
T: 925-543-2555
F: 925-369-0344

Adam J. Levitt (pending admission *pro hac vice*)
alevitt@dlcfirm.com
Amy E. Keller (pending admission *pro hac vice*)
akeller@dlcfirm.com
**DICELLO LEVITT & CASEY LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
T: 312-214-7900
F: 440-953-9138

*Additional Counsel Listed on Signature Page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD REIS and ZACHARY FINER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTEL CORPORATION,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Richard Reis and Zachary Finer individually and on behalf of all others similarly situated allege based upon information and belief and personal knowledge as follows.

### INTRODUCTION

1. Intel Corporation ("Intel") is the top-selling semiconductor company in the world and manufactures processors that are used in the most popular personal computers ("PCs") sold on the market.

2. Intel's success is based, in large part, on its ability to produce some of the fastest central processing units ("CPUs") in the world—a fact that Intel touts in its advertising and on the packaging for

the products it sells.

3.     In order to make faster processors, Intel took short cuts. Unfortunately, these shortcuts created a vulnerability or flaw that gives hackers the ability to access sensitive, private, and secure information in every PC that uses an Intel processor manufactured at least 2004.  This major security flaw is referred to as "Meltdown" in the computer industry.

4.     To correct this problem, companies that design operating systems are now scrambling to develop patches, which will slow down PCs that use Intel processors by as much as thirty percent.

5.     PCs that do not have Intel processors are not affected by the "Meltdown" flaw. Accordingly, Intel's representations that its processors are some of the fastest available on the market are demonstrably false because, in order to be secure, the security flaw—the very feature that made the processors fast—must be fixed.

## THE PARTIES

**A.    Plaintiffs**

6.     Richard Reis is a citizen and resident of the State of Ohio and bought a computer in 2017 that contained an Intel processor.  Mr. Reis used his computer primarily for personal purposes.  He was unaware of the Meltdown Defect described herein prior to the purchase of his computer. Had Intel disclosed that its CPUs had a major security flaw that would need to be "patched," thus making his computer substantially slower, he would not have purchased the PC with an Intel processor or would have paid substantially less for it.

7.     Zachary Finer a citizen and resident of the state of Illinois and bought an Intel CPU along with other computer components in 2013.  Mr. Finer uses his computer primarily for personal purposes. He was unaware of the Meltdown Defect described herein prior to the purchase of his computer. Had Intel disclosed that its CPUs had a major security flaw that would need to be "patched," thus making his computer substantially slower, he would not have purchased the PC with an Intel processor or would have paid substantially less for it.

**B.    Defendant**

8.     Intel Corporation is a business incorporated under the laws of the State of Delaware with its principal place of business located in Santa Clara, California.  Intel is engaged in the business of

1    designing, manufacturing, distributing, and/or selling computer products, including processors and the

2    defective Intel CPUs that are at issue.   Based upon information and belief, Intel's actions and

3    representations alleged herein emanated from the State of California from its corporate headquarters in

4    Santa Clara and Intel's business acts and practices complained of were centered in, carried out,

5    effectuated and perfected within or had their effect in the State of California, and injured Plaintiffs and

6    all Class members. Accordingly, the application of California law to the entire Class is appropriate.

7    **JURISDICTION AND VENUE**

8        9.      This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)

9    because the parties are diverse, and the amount in controversy exceeds $5 million, excluding interest and

10    costs.

11       10.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Intel's

12    headquarters is located in this District, and a substantial parts of the events and omissions giving rise to

13    Plaintiffs' claims occurred in this District.

14    **FACTUAL ALLEGATIONS**

15       11.      Computers contain microprocessors, also known as the central processing unit (or CPU),

16    which are small chips that reside in computers and other electronic devices

17       12.      The CPU handles all basic system instructions, such as processing mouse and keyboard

18    input and running applications.

19       13.      One of the most important tasks that a CPU must perform is allowing a computer's

20    operating system to interact with the computer's hardware.  The CPU does this by dedicating some of its

21    processing power to this task. This dedicated memory is known as kernel memory.

22       14.      There are thus two different types of "modes" a computer can be in: the "user" mode, and

23    the "kernel" mode.  The user mode is when the user of the computer is inputting commands and the

24    kernel mode being when the computer is carrying out the task that the user inputted.

25       15.      Kernel memory is used for tasks such as writing to a file, or opening a network connection.

26    When a software program needs to execute an action, it temporarily hands control of the CPU to the

27    kernel memory to carry out the task.

28       16.      To make the transition from user mode to kernel mode and back to user mode as fast and

efficiently as possible, the kernel is always present, although it is invisible to these programs.

17.   When the kernel is needed, the program makes a system call, the processor switches to kernel mode and uses the kernel memory to complete the task the user wants. When the task is complete, the CPU leaves the kernel memory and allows the computer to accept commands from the user and software again—to wit, user mode.

18.   While in user mode, the kernel's code and data remains out of sight but present in the background.

19.   To develop faster and faster CPUs, Intel took shortcuts.  Specifically, Intel designed a flaw that allows low-privilege processes to access memory in the computer's kernel when it should not be allowed to.

20.   This flaw has come to be known as "Meltdown," and it was discovered by Jann Horn, a security analyst at Google-run security research group called Google Project Zero in June 2017,[1] but was not made public until on or about January 2, 2018.

21.   The problem with low-privilege processes accessing the kernel is that it essentially gives hackers and the malicious software they develop the ability to spy on computer processes and, correspondingly, any information maintained on the computer's or server's physical memory. This includes but is not limited to: passwords, usernames, and sensitive personal information.

22.   Indeed, online resources have demonstrated that the Meltdown security flaw could allow hackers to steal passwords *in real time*.[2]

23.   Because of the nature of Meltdown, any type of spying by malicious software or hackers would not be discoverable on general logs the computer maintains—thus preventing easy detection of the spying.

---

[1] Cade Metz and Nicole Perlroth, *Researchers Discovery Two Major Flaws in the World's Computers*, The New York Times (Jan. 3, 2018), *available at* https://www.nytimes.com/2018/01/03/business/computer-flaws.html.  *See also* Project Zero, Reading Privileged memory with a side-channel (Jan. 3, 2018), https://googleprojectzero.blogspot.com/2018/01/reading-privileged-memory-with-side.html; Lipp, et al., *Meltdown*, https://meltdownattack.com/meltdown.pdf.

[2] Michael Schwarz Twitter Status, "Using #Meltdown to steal passwords in real time #intelbug #kaiser #kpti" (Jan. 3, 2018), https://twitter.com/misc0110/status/948706387491786752.

24.    To safeguard a computer from the Meltdown security flaw, the operating system[3] must be updated or "patched" with software code.  The patch will result in computers with Intel CPUs ignoring the kernel memory inside of Intel microprocessors. This process is known as Kernel Page Table Isolation or "KPTI."  KPTI will result in a dramatic slowdown of computing performance—estimated by some to be up to 30 percent.[4]

25.    Leaving a computer vulnerable to hackers is unacceptable and could result in anything from the installation of malware to identity theft.  Consumers are left with no choice but to accept the patch to fix the Meltdown security flaw that Intel knew about for over a year (and should have known about for much longer).

26.    But rather than inform consumers about the major security flaw, Intel continued to sell CPUs at a price much higher than consumers would have paid for them had they known about the flaw. Further, Intel sold the CPUs to consumers touting the processors' fast speeds, while the very shortcuts that Intel took to develop its processors necessitated a patch that would slow down processor speeds.

27.    Indeed, rather than inform consumers about the major security flaw, Intel's Chief Executive Officer Brian Krazanich opted to sell millions of dollars of Intel stock—all that he could part with under the corporate bylaws—after he learned of the Meltdown security flaw.  As a result of the stock sale, Krzanich received more than $39 million before the security flaw became public.[5]

28.    Accordingly, had consumers known of the Meltdown security flaw, or of the patch needed to guard their vulnerable and sensitive data, they would not have bought the Intel CPUs, or would have paid substantially less for them.

29.    Plaintiffs and Class members used Intel's products and had business dealings with Intel either directly or indirectly as described above. The acts and practices of Intel have caused Plaintiffs and

---

[3] Operating systems is the software program that runs the computer and all the programs for a user. The major operating systems are: Microsoft's Windows, Apple's Mac OS, Canonical Ltd.'s Ubuntu (a Linux based system)

[4] Rob Thubron, *Massive security flaw found in Intel CPUs, patch could hit performance by up to 30%*, Techspot (Jan. 3, 2018), *available at* https://www.techspot.com/news/72550-massive-security-flaw-found-almost-all-intel-cpus.html.

[5] Sean Gallagher, *Intel CEO sold all the stock he could after Intel learned of security bug*, ArsTechnica (Jan. 4, 2018), *available at* https://arstechnica.com/information-technology/2018/01/intel-ceos-sale-of-stock-just-before-security-bug-reveal-raises-questions.

Class members to lose money and property by being overcharged for and paying for the defective CPUs at issue, or being required to purchase an additional working CPU. Such loss was the result of the above acts of unfair competition and Intel's misconduct, and injury occurred at the point of sale.

## TOLLING OF APPLICABLE STATUES OF LIMITATION

30.     **Discovery Rule Tolling.**  Neither Plaintiffs nor the other Class members could have discovered through the exercise of reasonable diligence that their CPUs suffered from a major security flaw within the time period of any applicable statutes of limitation.

31.     **Fraudulent Concealment Tolling.**  Throughout the time period relevant to this action, Intel concealed from and failed to disclose to Plaintiffs and the other Class members vital information concerning the Meltdown security flaw described herein. Indeed, Intel has known of the security flaw for over a year, and either knew or otherwise should have known of the flaw in its CPUs well before its discovery by a third party.

32.     Intel kept Plaintiffs and the other Class members ignorant of vital information essential to the pursuit of their claims.  As a result, neither Plaintiffs nor the other Class members could have discovered the security flaw, even upon reasonable exercise of diligence.

33.     Despite its knowledge of the security flaw (and the need to develop a patch to fix it that will significantly slow processing speed), Intel failed to disclose and concealed, and continues to conceal, this critical information from Plaintiffs and the other Class members, even though, at any point in time, it could have done so through individual correspondence, media release, or by other means.

34.     Plaintiffs and the other Class members justifiably relied on Intel to disclose the Meltdown safety flat in the CPUs that they purchased or leased, because that defect was hidden and not discoverable through reasonable efforts by Plaintiffs and the other Class members.

35.     Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiffs and the other Class members have sustained as a result of the Meltdown security flaw, by virtue of the fraudulent concealment doctrine.

36.     **Estoppel.**  Intel was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the defective CPUs and Meltdown security flaw, but concealed the true nature, quality, and character of the defective CPUs.

37.     Based on the foregoing, Intel is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ALLEGATIONS

38.     Plaintiffs bring this class action claim pursuant to Federal Rule of Civil Procedure 23 on their own behalf, as well as the following Class:

> All persons in the United States who purchased one or more Intel CPUs either from Intel, its authorized retail sellers, or from a computer retailer or manufacturer who installed an Intel CPU inside the customer's computer.

39.     Plaintiffs also bring the action on behalf of their state Subclasses for Class members in the states of Illinois and Ohio.

40.     Plaintiffs reserve the right to amend or modify the Class definition in connection with a motion for class certification or the result of discovery.

41.     This action has been brought and may properly be maintained on behalf of the Nationwide and Statewide Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

42.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The Class is so numerous that joinder of the individual members of the proposed Class is impracticable. The Class includes millions of persons geographically dispersed throughout the United States. The precise number and identities of Class members are unknown to Plaintiffs, but are known to Intel or can be ascertained through discovery, using records of sales, warranty records, and other information kept by Intel or its agents.  Plaintiffs do not anticipate any difficulties in the management of this action as a class action. The Class is ascertainable, and there is a well-defined community of interest in the questions of law and fact alleged herein since the rights of each Class member were infringed or violated in similar fashion based upon Intel's uniform misconduct.  Notice can be provided through sales and warranty records and publication.

43.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Questions of law or fact common to the Class exist as to Plaintiffs and all Class members, and these common questions predominate over any questions affecting only individual members of the Class. Individual questions, if any, pale by comparison to the numerous common questions that predominate. Among these predominant common questions of law and/or fact are the following:

a.    Whether Intel's CPUs possess the Meltdown security flaw and the nature of that defect;

b.    Whether Intel made any implied warranties in connection with the sale of the defective CPUs;

c.    Whether Intel breached any implied warranties relating to its sale of defective CPUs by failing to resolve the Meltdown security flaw in the manner required by law;

d.    Whether Intel was unjustly enriched by selling the defective CPUs;

e.    Whether Intel violated applicable consumer protection laws by selling CPUs with the Meltdown security flaw or by failing to disclose the security flaw, and failing to provide the relief required by law; and

f.    The appropriate nature and measure of Class-wide relief.

44.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the claims of Class members. The injuries sustained by Plaintiffs and the Class flow, in each instance, from a common nucleus of operative facts based on Intel's uniform conduct as set forth above. The defenses, if any, that will be asserted against Plaintiffs' claims likely will be similar to the defenses that will be asserted, if any, against Class members' claims.

45.    **Adequacy—Federal Rule of Civil Procedure 23(a)(4).**  Plaintiffs will fairly and adequately protect the interests of Class members.  Plaintiffs have no interests materially adverse to or that irreconcilably conflict with the interests of Class members and have retained counsel with significant experience in handling class actions and other complex litigation, and who will vigorously prosecute this action.

46.    **Superiority and Manageability—Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy, and individual joinder of all Class members is impracticable, if not impossible, because a large number of Class members are located throughout the United States.  Moreover, the cost to the court system of such individualized litigation would be substantial. Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties and multiple courts hearing virtually identical lawsuits.  By contrast, the conduct

of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the courts, protects the rights of each Class member and maximizes recovery to them.

47.    **Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).**  Intel has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief  appropriate with respect to the Class as a whole.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
Breach of Implied Warranty
On behalf of plaintiffs, individually, and the Class

48.    Plaintiffs hereby incorporate all the above allegations by reference as if fully set forth herein.  Plaintiffs assert this count individually and on behalf of the proposed Class.

49.    Intel and its authorized agents and resellers sold Intel CPUs to Plaintiffs and Class members in the regular course of business.

50.    Intel impliedly warranted to members of the general public, including Plaintiffs and Class members, these CPUs were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it is made, of average worth in the marketplace, or not broken, unworkable, damaged, contaminated or flawed), was of the same quality as those generally acceptable in the trade or that would pass without objection in the trade, were free from material defects and were reasonably fit for the ordinary purposes  for which they were intended or used. In addition, Intel either was or should have been aware of the particular purposes for which such CPUs are used, and that Plaintiffs and the Class members were relying on the skill and judgment of Intel to furnish suitable goods for such purpose.

51.    Pursuant to agreements between Intel and its authorized agents and re- sellers, the stores Plaintiffs and Class members purchased their defective Intel CPUs from are authorized retailers and authorized CPU service facilities. Plaintiffs and Class members are third-party beneficiaries of, and substantially benefited from, such contracts.

52.    Intel breached its implied warranties by selling Plaintiffs and Class members defective Intel CPUs. The Defect renders the Intel CPUs unmerchantable and unfit for their ordinary or particular use or purpose. Intel has refused to recall, repair or replace, free of charge, all Intel CPUs or any of their

1  defective component parts or refund the prices paid for such CPUs.

2      53.    The Defect in the Intel CPUs existed when the CPUs left Intel's and their authorized

3  agents' and retail sellers' possession and thus is inherent in such CPUs.

4      54.    As a direct and proximate result of Intel's breach of its implied warranties, Plaintiffs and

5  Class members have suffered damages and continue to suffer damages, including economic damages at

6  the point of sale in terms of the difference between the value of the CPUs as warranted and the value of

7  the CPUs as delivered. Additionally, Plaintiffs and Class members either have or will incur economic,

8  incidental and consequential damages in the cost of repair or replacement and costs of complying with

9  continued contractual obligations as well as the cost of buying an additional CPU they would not have

10  purchased had the CPUs in question not contained the non-repairable Defect.

11      55.    Plaintiffs and Class members are entitled to legal and equitable relief against Intel,

12  including damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as

13  appropriate.

14

**SECOND CAUSE OF ACTION**
Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*.
On behalf of plaintiffs, individually, and the Class

15

16      56.    Plaintiffs hereby incorporate the above allegations in paragraphs 1-47 by reference as if

17  fully set forth herein.  Plaintiffs assert this count individually and on behalf of the proposed Class.

18      57.    Intel's actions and representations alleged herein emanated from the State of California

19  from its corporate headquarters in Santa Clara, California.  Accordingly, the application of the CLRA to

20  the entire Class is appropriate.  Intel's business acts and practices complained of were centered in, carried

21  out, effectuated and perfected within or had their effect in the State of California, and injured Plaintiffs

22  and all Class members.

23      58.    The Consumers Legal Remedies Act ("CLRA") was enacted to protect consumers against

24  unfair and deceptive business practices.  The CLRA applies to Intel's acts and practices because it covers

25  transactions involving the sale of goods to consumers.

26      59.    The Intel CPUs are "goods" under California Civil Code §1761(a).

27      60.    Intel is a "person" under California Civil Code §1761(c).

28      61.    Plaintiffs and the Class members are "consumers" under California Civil Code §1761(d).

62.     Plaintiffs and Class members engaged in "transactions" under California Civil Code §1761(e), including the purchase of Intel CPUs and the presentation of Intel CPUs for repair or replacement of the Defect.

63.     Intel's unfair and deceptive business practices were intended and did result in the sale of Intel CPUs, a defective consumer product.

64.     Intel's CPUs contained a major security flaw resulting in their failure to perform in accordance with their expected characteristics, uses and benefits, and a patch that will further result in their failure to perform in accordance with their expected characteristics, uses and benefits.

65.     Intel had exclusive knowledge of material facts, and Plaintiffs and Class members had known of the Meltdown security flaw in the Intel CPU, they would not have purchased the CPUs at the prices they did, if at all.

66.     Intel had a duty to disclose the Meltdown security flaw for various reasons, including:

        a.      Intel had exclusive knowledge of the security flaw and other material facts not known to Plaintiffs or the Class; and

        b.      Intel actively concealed a material fact from Plaintiffs and the Class.

67.     Intel engaged in unfair and deceptive practices by misrepresenting or not disclosing the above material facts from Plaintiffs and the Class, in violation of Cal. Civ. Code §1770(a)(5), (7), (14) and (16).

68.     As a direct and proximate result of Intel's conduct, Plaintiffs and the Class members suffered injury. Plaintiffs and Class members are entitled to injunctive relief, court costs and attorney fees, and other relief the Court deems proper.

69.     At this time, Plaintiffs only seek injunctive relief and do not seek an award of damages under the CLRA.

### THIRD CAUSE OF ACTION
Violation of the Unfair Competition Law, California Civil Code § 17200, *et seq.*
On behalf of plaintiffs, individually, and the Class

70.     Plaintiffs hereby incorporate the above allegations in paragraphs 1-47 by reference as if fully set forth herein.  Plaintiffs assert this count individually and on behalf of the proposed Class.

71.     Intel's actions and representations alleged herein emanated from the State of California

from its corporate headquarters in Santa Clara, California. Accordingly, the application of the UCL to the entire Class is appropriate. Intel's business acts and practices complained of were centered in, carried out, effectuated and perfected within or had their effect in the State of California, and injured Plaintiffs and all Class members.

72.    Intel committed acts of unfair competition, as defined by §17200, *et seq.*, of the California Business and Professions Code, by engaging in the acts and practices specified above. Those acts and practices were unlawful, unfair, and fraudulent.

73.    This claim is brought pursuant to §§17203 and 17204 of the California Business and Professions Code to obtain equitable monetary and injunctive relief from Intel for acts and practices as alleged herein that violated §17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

74.    Intel's conduct as alleged herein violated §17200. The acts, omissions, practices and non-disclosures of Intel constituted a common continuous course of conduct of unfair competition by means of the commission of unfair and unlawful business acts or practices within the meaning of California Business and Professions Code, §17200, *et seq.*

75.    Intel engaged in unlawful, unfair, and fraudulent business acts and practices by:

a.    engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and the Class considering the reasonably available alternatives, based on legislatively declared policies not to sell defective products in the market without providing an adequate remedy therefor;

b.    engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the Class;

c.    engaging in unfair business practices by refusing to repair or recall the Intel CPUs or providing compensation therefor; and

d.    using unfair, deceptive, untrue, and misleading advertising regarding the speed and/or security of the Intel CPUs.

76.    Specifically, Intel sold the Intel CPUs knowing or being aware the CPUs contained a critical security defect, where the OS-level software patch would degrade the processors performance.

Intel also engaged in unfair business acts and practices by making warranties, which it refuses to honor.

77.     As such conduct is or may well be continuing and on-going, Plaintiffs and each of the Class members are entitled to injunctive relief to prohibit or correct such on-going acts of unfair competition, in addition to obtaining equitable monetary relief.

78.     Plaintiffs and Class members used Intel's products and had business dealings with Intel either directly or indirectly as described above. The acts and practices of Intel have caused Plaintiffs and Class members to lose money and property by being overcharged for and paying for the defective CPUs at issue, or being required to purchase an additional working CPU.  Such loss was the result of the above acts of unfair competition and Intel's misconduct in violation of the state laws set forth herein. Plaintiffs are therefore entitled to seek recovery of such amounts. Such injury occurred at the point of sale. Plaintiffs have thus each suffered injury in fact and lost money or property as a result of such acts and practices as set forth in detail above

79.     Intel has unjustly benefited as a result of its wrongful conduct and its acts of unfair competition. Plaintiffs and Class members are accordingly entitled to equitable relief including restitution and/or restitutionary disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Intel as a result of such business acts and practices, pursuant to California Business and Professions Code §§17203 and 17204, as well as attorneys' fees and costs pursuant to, among others, California Code of Civil Procedure §1021.5.

### THIRD CAUSE OF ACTION
Unjust Enrichment, or Quasi-Contract
On behalf of plaintiffs, individually, and the Class

80.     Plaintiffs hereby incorporate the above allegations in paragraphs 1-47 by reference as if fully set forth herein.  Plaintiffs assert this count individually and on behalf of the proposed Class, and in the alternative to any contract- or warranty-based causes of action pursuant to Federal Rule of Civil Procedure 8(d)(2).

81.     As Plaintiffs and the Class show just grounds for recovering money paid for benefits Intel received from them, either directly or indirectly, and they have a right to restitution at law through an action derived from the common-law writ of assumpsit by implying a contract at law based on principles of restitution and unjust enrichment, or though quasi-contract.

82.     Intel, having received such benefits, is required to make restitution. The circumstances here are such that, as between the two, it is unjust for Intel to retain such benefit based on the conduct described above.  Such money or property belongs to the Plaintiffs and Class members and can be traced to funds or property in Intel's possession.

83.     Plaintiffs and Class members have unjustly enriched Intel through payments and the resulting profits enjoyed by Intel as a direct result of such payments. Plaintiffs' detriment and Intel's enrichment were related to and flowed from the conduct challenged in this Complaint.

84.     By virtue of the purchase and sale of the CPUs in question, Intel alternatively entered into a series of implied-at-law or quasi-contracts that resulted in money being had and received by Intel, either directly or indirectly, at the expense of Plaintiffs and Class members.  Plaintiffs and other Class members conferred a benefit upon Intel by purchasing one of the defective CPUs. Intel had knowledge of the general receipt of such benefits, which Intel received, accepted and retained. Intel owes Plaintiffs and Class members these sums that can be obtained either directly from Class members, Intel or its authorized retailers.

85.     Intel should not be permitted to retain the benefits conferred by Plaintiffs and Class members via payments for the defective CPUs.  Other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

**FOURTH CAUSE OF ACTION**
Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.1, *et seq.*
On behalf of Plaintiff Reis, individually, and Ohio Subclass

86.     Plaintiff Reis hereby incorporates the above allegations in paragraphs 1-47 by reference as if fully set forth herein.

87.     Intel engaged in unfair and deceptive acts and practices in connection with a consumer transaction, in violation of Ohio Rev. Code § 1345.01(A) and (B), including but not limited to the following:

a.     Marketing and selling a product with a security flaw in it;

b.     Knowingly and fraudulently misrepresenting that its product would perform as advertised as it relates to security and speed even though it is not possible; and

c.     Omitting, suppressing, and concealing the material fact of the inadequacy of its

CLASS ACTION COMPLAINT                    14                    Case No.

1    product to be both secure and perform as intended at the same time.

2    88.    The above unfair and deceptive acts and practices and acts by Intel were immoral,

3    unethical, oppressive, and unscrupulous.  These acts caused substantial injury to the Ohio Subclass

4    members that they could not reasonably avoid; this substantial injury outweighed any benefits to

5    consumers or to competition.

6    89.    Intel knew or should have known that its microprocessors were inadequate to safeguard

7    the Ohio Subclass members' personal and sensitive information and that risk of a data breach or theft

8    was highly likely.  Intel's actions in engaging in the above-named unfair practices and deceptive acts

9    were negligent, knowing and willful.

10   90.    Moreover, rather than acknowledge the Meltdown defect and sell the Intel processors with

11   the patch, Intel continued to market the CPUs as fast, despite that the patch to fix the security flaw would

12   significantly slow down processing speeds.

13   91.    Pursuant to Ohio Rev. Code § 1345.09, Plaintiff and the Ohio Subclass members seek an

14   order enjoining Intel's unfair and/or deceptive acts or practices actual damages, trebled (to be proven at

15   the time of trial), and attorneys' fees, costs, and any other just and proper relief, to the extent available

16   under the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01, *et seq*.

17                              **FIFTH CAUSE OF ACTION**
                  Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01, *et seq*.
18                  On behalf of Plaintiff Reis, individually, and Ohio Subclass

19   92.    Plaintiff Reis hereby incorporates the above allegations in paragraphs 1-47 by reference

20   as if fully set forth herein.

21   93.    Intel engaged in deceptive trade practices in the course of its business and vocation,

22   including representing that its services had characteristics that they did not have, representing that its

23   services were of a particular standard or quality when they were not, and advertising its services with

24   intent not to sell them as advertised in violation of Ohio Rev. Code § 4165.02(A). This includes but is

25   not limited to the following:

26        a.    Failing of its product to be both secure and work as stated;

27        b.    Knowingly and fraudulently misrepresenting that its product could be both secure

28             and work as advertised; and

c.     Knowingly and fraudulently selling a product that would be substantially slower than advertised because a patch is needed to secure it.

94.     As a direct and proximate result of Intel's practices, Ohio Subclass members suffered injury and/or damages, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their Personal Information.

95.     Further, Ohio Subclass members suffered injury and damages in paying for a product that is not as it is advertised, as a security patch is predicted to significantly slow down processing speeds.

96.     The above unfair and deceptive acts and practices and acts by Intel were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to the Ohio Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

97.     Intel knew or should have known that its computer microprocessors would not be able to be both secure and perform at the speeds it claims to work at. Intel's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful.

98.     Pursuant to Ohio Rev. Code § 1345.09, Plaintiff and Ohio Subclass members seek an order enjoining Intel's unfair and/or deceptive acts or practices actual damages, trebled (to be proven at the time of trial), and attorneys' fees, costs, and any other just and proper relief, to the extent available under the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01, *et seq.*

### SIXTH CAUSE OF ACTION
Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*
On behalf of Plaintiff Finer, individually, and Illinois Subclass

99.     Plaintiff Finer hereby incorporates the above allegations in paragraphs 1-47  by reference as if fully set forth herein.

100.     Intel engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of 815 ILCS 505/2, including but not limited to the following:

a.     Fraudulently advertising material facts pertaining to the goods marketed and sold to Illinois Subclass members by representing and advertising that their microprocessors would be both secure and perform as advertised; and

b.      Misrepresenting material facts pertaining to goods marketed and sold to Illinois Subclass members by representing and advertising that their product was both secure and could perform at the speeds advertised.

101.    As a direct and proximate result of Intel's deceptive trade practices, Illinois Subclass members suffered injuries, including the loss of their legally protected interest in the confidentiality and privacy of their Personal Information, and damages, as described above.

102.    Further, as a direct and proximate result of Intel's deceptive trade practices, Illinois Subclass members suffered injuries as a result of a lack of benefit of the bargain, in paying for Intel CPUs that were slower than advertised as a result of needing a patch to repair the Meltdown security flaw.

103.    Intel's acts caused substantial injury—a loss of benefit of the bargain—that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

104.    Intel knew or should have known that their microprocessors were inadequate to safeguard Illinois Subclass members' Personal Information and that risk of a data breach or theft was highly likely, thus necessitating a patch to cure Intel's shortcuts.  Intel's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Illinois Subclass.

105.    Plaintiff and Illinois Subclass members seek relief under 815 ILCS 505/10a, including, but not limited to, damages, restitution, punitive damages, injunctive relief, and/or attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq.*
On behalf of Plaintiff Finer, individually, and Illinois Subclass

106.    Plaintiff Finer hereby incorporates the above allegations in paragraphs 1-47 by reference as if fully set forth herein.

107.    While in the course of its businesses, Intel engaged in deceptive trade practices by making false representations, including its representations that its microprocessors were both secure and could perform at its advertised levels, in violation of 815 ILCS 510/2(a)(5), (7).

108.    Intel knew or should have known that its microprocessors would not perform as advertised

1  and engaged in negligent, knowing, and/or willful acts of deception.

2       109.   Plaintiff and Illinois Subclass members are likely to be damaged by Intel's deceptive trade

3  practices.

4       110.   Plaintiff and Illinois Subclass Members seek relief under 815 ILCS 510, including, but

5  not limited to, injunctive relief and attorney's fees.

6                              **PRAYER FOR RELIEF**

7       WHEREFORE, Plaintiffs and all Class members pray for judgment against Intel as follows:

8       a.      Declaring this action to be a proper class action pursuant to Rule 23 of the Federal Rules

9  of Civil Procedure, appointing the undersigned as Class Counsel, and appointing the Plaintiffs as Class

10 Representatives;

11      b.      Awarding Plaintiffs and Class members all proper measures of equitable monetary relief

12 and damages (damages excluded at this time for violations of the CLRA), plus interest to which they are

13 entitled;

14      c.      Awarding equitable, injunctive, and declaratory relief as the Court may deem just and

15 proper, including restitution and restitutionary disgorgement;

16      d.      Awarding Plaintiffs' reasonable costs and attorney's fees; and

17      e.      Granting such further and other relief this Court deems appropriate

18                              **DEMAND FOR JURY TRIAL**

19      Plaintiffs, individually and on behalf of all others similarly situated demand a trial by jury on all

20 issues so triable.

21

22 **DATED:** January 4, 2018        /s/   *Jeffrey L. Fazio*
                                     Jeffrey L. Fazio (146043) (jlf@fazmiclaw.com)
23                                   Dina E. Micheletti (184141) (dem@fazmiclaw.com)
                                     **FAZIO | MICHELETTI LLP**
24                                   2410 Camino Ramon, Suite 315
                                     San Ramon, California  94583
25                                   T:  925-543-2555
                                     F:  925-369-0344
26
                                     Adam J. Levitt (pending admission *pro hac vice*)
27                                   (alevitt@dlcfirm.com)
                                     Amy E. Keller (pending admission *pro hac vice*)
28                                   (akeller@dlcfirm.com)
                                     **DICELLO LEVITT & CASEY LLC**
                                     Ten North Dearborn Street, Eleventh Floor

1

Chicago, Illinois  60602
T: 312-214-7900
F: 440-953-9138

2

Mark M. Abramowitz (pending admission *pro hac vice*)
(mabramowitz@dlcfirm.com)
**DiCello Levitt & Casey LLC**
7556 Mentor Ave
Mentor, Ohio 44060
T: 440-953-8888
F: 440-953-9138

W. Daniel "Dee" Miles, III
Leslie Pescia
**BEASLEY ALLEN CROW METHVIN
PORTIS & MILES, P.C.**
218 Commerce Street
Montgomery, Alabama  36103
Telephone:  (334) 269-2343
Dee.Miles@beasleyallen.com
Leslie.Pescia@beasleyallen.com

3

4

5

6

7

8

9

10

11

*Counsel for Plaintiffs and the Putative Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT                    19                    Case No.